```
         UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
         ------------------------------x

         ALPARI (US), LLC,

                        Plaintiff,

                 v.                              17 CV 5278 (LGS)

         BNP PARIBAS, S.A.,

                        Defendant.

         ------------------------------x
                                                 New York, N.Y.
                                                 April 12, 2018
                                                 11:05 a.m.
         Before:

                          HON. LORNA G. SCHOFIELD,

                                                 District Judge

                                  APPEARANCES

         SCOTT+SCOTT ATTORNEYS AT LAW LLP
              Attorneys for Plaintiff
         BY:  WALTER W. NOSS (Via Telephone)

         ALLEN & OVARY, LLP
              Attorneys for Defendant
         BY:  LAURA ROSE HALL (Via Telephone)

         CAHILL GORDON & REINDEL
              Attorneys for Credit Suisse
         BY:  DAVID JANUSZEWSKI (Via Telephone)

         DAVIS POLK
              Attorneys for Royal Bank of Scotland
            BY:  JOEL M. COHEN (Via Telephone)
                 JENNIFER ANN PREVETE (Via Telephone)
```

1           (Case called)
2           THE DEPUTY CLERK:  The judge is going to talk to the
3  attorneys, and we can begin.
4           THE COURT:  Good morning.
5           I called this conference so that I could give you a
6  ruling on the pending motion by defendants to compel
7  arbitration.  I'm not going to hear any oral argument, but if
8  any counsel would like your appearances noted on the record,
9  please tell me now who is here.
10          Why don't we just start with the plaintiffs.  The
11 court reporter will take it down.
12          MR. NOSS:  Good morning, your Honor.  This is Walter
13 Noss from Scott & Scott on behalf of plaintiff Alpari.
14          THE COURT:  Thank you.
15          How about from BNP Paribas?
16          MS. HALL:  This is Laura Hall from Allen & Ovary, LLP
17 for BNP Paribas.
18          THE COURT:  Credit Suisse?
19          MR. JANUSZEWSKI:  Good morning, your Honor.  This is
20 David Januszewski from Cahill Gordon & Reindel.
21          THE COURT:  Good morning.
22          And Royal Bank of Scotland?
23          MR. COHEN:  Good morning, your Honor.  It's Joel Cohen
24 from Davis Polk with Jennifer Prevete, also from Davis Polk.
25          THE COURT:  All right.  Let's proceed.  I'm not going

to give a lot of background. I know you're all familiar with it. These are three separate putative class actions in which the plaintiff Alpari brings claims that defendants reneged on orders that Alpari and other putative class members matched and accepted through electronic trading platforms in the foreign exchange market. As I mentioned, this is a motion to compel arbitration by the defendants.

One piece of background, the National Futures Association or NFA is a self-regulatory organization with authority from the Commodity Future Trading Commission to regulate the derivatives market.

Entities that conduct business in derivatives are required to register as NFA members, and Plaintiff Alpari was a registered NFA member from November 14, 2007, to April 21, 2015.

Defendants BNP Paribas, Credit Suisse Securities (USA) LLC, and RBS Securities Inc. are currently registered NFA members. Defendants Credit Suisse AG, Credit Suisse Group AG, and the Royal Bank of Scotland Group plc, which I'll call, RBS Group plc are corporate parents of the NFA member defendants.

The NFA Member Arbitration Rules provide for mandatory arbitration of "disputes between and among members" subject to the timeliness requirements and enumerated exceptions, and I'm quoting the NFA rule Section 2(a).

So turning to the legal standard, the Federal

Arbitration Act or FAA "embodies a national policy favoring arbitration." I'm citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016).

However, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 297 (2010).

The Court considers two factors when deciding if a dispute is arbitrable: "One, whether the parties agreed to arbitrate, and, if so, two, whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC,* 802 F.3d 391, 394 (2d Cir. 2015).

"The question of whether the parties indeed agreed to arbitrate is determined by state contract principles, *Nicosia*, 834 F.3d at 229. "The arbitration rules of an industry self-regulatory organization are interpreted like contract terms; the organization's arbitration provision should thus be interpreted to give effect to the parties' intent as expressed by the plain language of the provision." *CitiGroup Glob. Markets Inc. v. Abbar,* 761 F.3d 268, 274 (2d Cir. 2014).

"While doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. NewOak Capital Markets, LLC,* 645 F.3d 522, 526, (2d

1  Cir. 2011).

2      In deciding motion to compel arbitration, courts apply
3  a "standard similar to that applied for a motion for summary
4  judgment." *Nicosia*, 834 F.3d at 229. Courts must "consider
5  all relevant, admissible evidence submitted by the parties and
6  contained in pleadings, depositions, answers to
7  interrogatories, and admissions on file, together with
8  affidavits," and must "draw all reasonable inferences in favor
9  of the nonmoving party." Id.

10     So turning to this case, defendants' motion to compel
11 arbitration is granted because Alpari's claims are subject to
12 mandatory NFA arbitration. As relevant here, the NFA rules
13 provide that "disputes between and among members shall be
14 arbitrated under these rules," subject to timeliness
15 requirements and exceptions not applicable here. I'm quoting
16 the NFA rule Section 2(a).

17     Alpari, as I mentioned, was a registered NFA member at
18 the time the acts or transactions that are the subject of the
19 dispute occurred and is thus a "member" for purposes of this
20 dispute as defined by the NFA rules Section 1(j).

21     Defendants BNP Paribas, S.A., Credit Suisse Securities
22 (USA) LLC, and RBS securities, Inc. are registered NFA members.
23 The remaining defendants are corporate parents of the
24 NFA-member defendants as to whom the complaints allege no
25 specific suit-related conduct distinct from that of their NFA

member subsidiaries.  These actions are plainly "disputes between and among members" and thus "shall be arbitrated" under the NFA rules.

Alpari argues that only disputes "solely" between NFA members are subject to mandatory arbitration under the rules. In support, Alpari cites an NFA notice, I-99-11 from 1999, explaining the contemporaneous rule changes that initiated fully mandatory arbitration between NFA members.  The notice states that "disputes solely between members will be subject to fully mandatory arbitration, which means members will be required to file their claims at NFA."

Alpari's interpretation is unpersuasive.  First, the NFA notice is not part of the rules and does not bind the parties.  No language in the NFA rules themselves states or implies that disputes must be solely between NFA members to be subject to mandatory arbitration.

On the contrary, such a requirement would effectively nullify the mandatory arbitration clause because claimants would be able to side-step arbitration by naming nonmember defendants in a lawsuit like the corporate parents named in these cases at bar.

Second, to the extent the notice informs the Court's interpretation of the NFA rules, in context, the notice appears to draw a distinction between disputes among members and disputes involving "associated persons."

Following the above-quoted language, the notice states: "Fully mandatory arbitration will not, however, apply to claims by or against associated persons where the claimant will still be able to choose the forum." "Associate" is a defined term in the NFA rules that pertains to "associated persons as used in the Commodity Exchange Act. See NFA rules Section 1(C); 7 U.S.C. 6K.

The CEA's implementing regulations in turn define an "associated person" as "any natural person who is associated" with certain entities, for instance, futures commission merchants in a capacity involving soliciting or accepting customers' orders or supervising such a person, 17 C.F.R. Section 1.3.

In other words, an associated person is a salesperson or supervisor of a salesperson of certain types of NFA member entities. The notice makes clear that unlike disputes between members, disputes by or against associated persons are not fully mandatory. The NFA's member arbitration web page supports this interpretation.

So assuming arguendo that the NFA rules do not require arbitration, "under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where the issues the non-signatory are seeking to resolve in arbitration are intertwined with the agreement estopped party has signed."

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27, (2d Cir. 2010).

In addition to the intertwined factual issues, there must be "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party at that time arbitration agreement." Id. at 127.

In this case, the factual issues are not merely intertwined. They are identical. See id. at 128 and *In re A2P SMS Antitr. Litig.*, 972 F.Supp.2d 465, 478 (S.D.N.Y. 2013).

The complaints do not distinguish between the NFA member defendants and their nonmember corporate parents, instead defining NFA members and their parent companies collectively and alleging that these collective entities "engaged in FX transactions with plaintiff and the class that are the subject matter of this lawsuit."

The ultimate parent companies, Credit Suisse Group AG and RBS Group plc, are bank holding companies, neither of which is engaged in foreign exchange trading.

Under the NFA rules, Alpari is obligated to arbitrate its disputes with the member defendants. It is estopped from denying an obligation to arbitrate the same disputes by adding nonmember holding company parents as defendants.

1    Finally, these matters are stayed to allow the
2 arbitration to proceed and conclude pursuant to the FAA, 9
3 U.S.C., Section 3, and pursuant to Second Circuit case law, see
4 *Katz v. Cellco P'ship*, 794 F.3d 341, 345, (2d Cir. 2015).
5    So, for all of these reasons, defendants' motion to
6 compel arbitration is granted, and the cases are stayed.
7    Thanks very much, counsel.
8    (Adjourned)